The next case, number 221267, Captain Albert Brox v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth. At this time, would counsel for the appellant, Patrick Daubert, please introduce himself on the record to begin. Good morning, Your Honors, and may it please the Court. Patrick Daubert on behalf of the appellants, Captain Albert Brox et al. Chief Judge Barron, may I reserve one minute for muddle? You may. Your Honors, if I may dive right in to the prima facie case of religious discrimination that we argue was made out in below proceedings, which began in state court, importantly with the issuance of a TRO based on the Superior Court's finding that appellants did in fact demonstrate immediate and irreparable harm. They had tendered signed religious exemption requests to their employer's COVID-19 vaccine mandate. These forms had them sign under oath to sincerely holding religious beliefs that conflicted with the COVID-19 vaccines. An individualized inquiry was begun at that point at the behest of the employer. Follow-up questionnaires were solicited. One-on-one discussions were initiated by the employer to further probe the bona fides and sincerity of appellants' religious beliefs. Evidently satisfied with the prima facie showing that was made out by appellants, the employer, appellees before this court then undertook an undue hardship analysis to determine whether or not they could accommodate the appellants' religious beliefs. After about three weeks of deliberation, the appellees ultimately determined they made the specific finding that they were unable to approve the unvaccinated. So, your honors, this policy provided a mechanism for individualized exemptions. By appellees' own concession, they did undertake a case-by-case analysis to determine whether or not appellants' religious beliefs could be a direct threat to the public and their colleagues by virtue of being unvaccinated. Critically, this was the only stated reason for the employment action at hand. Just to be clear, the authority never questioned, or maybe it did. The authority never questioned the sincerity of the beliefs or questioned whether they were sincerely held religious beliefs. I thought the authority relies upon the undue hardship issue if the requested accommodation would be granted. Is that correct? I'm arguing that is what took place. However, the district court made findings regarding the bona fides of appellants' religious beliefs. For purposes of appellate review, if we chose to ignore that aspect of the district court's finding and just address the accommodation slash undue hardship, that is certainly something we could do, right? I hope so, your honor. And I'm prepared to jump right to the undue hardship. If you would, I mean, you should argue it as you wish, but I think it would be helpful if you were to get into that. So, your honors, once we have established that prima facie case of sincere and bona fide religious beliefs, my argument is that a higher level of scrutiny will immediately apply to any determinations that are made. And when we're talking about whether or not there were accommodations available that didn't pose an undue hardship, you have a multitude of facts below that demonstrate there were accommodations available, which did not impose an undue hardship on appellees. First of all, during the pendency of the religious exemption requests, all of appellants were allowed to continue to work. They were ordered to abide by these intermediate accommodations, masking and testing, which were the very accommodations they sought on a more permanent basis that were ultimately denied. So you have that. They were accommodated for about three weeks until they were ultimately put on unpaid suspension. You have the fact that another employee with the very same role as a number of appellants, it was a customer-facing role, he was allowed to work for 90 days pursuant to these masking and testing requirements. However, that was not a religious. In pieces, I just want to make sure I understand. Setting aside the treatment of the other individual who had the medical exemption but was allowed to stay on permanently as long as they use a mask, et cetera. Correct? It wasn't permanent. It was a three-month accommodation. It expired at some point in April. As opposed to three weeks for your client? They were never accommodated officially in the sense that the other employee was accommodated. They granted his medical as secular exemption request. My clients, they were only allowed to work while their religious exemption and reasonable accommodation requests were pending. I see. So that wasn't technically an accommodation? While they worked, Mike, the appellants, it was not technically an accommodation. I'm arguing it represented an intermediate accommodation because they were able to go back to work in violation. That's what I wanted to understand is because I'm a little hazy as to how the law is supposed to apply in this situation relative to how it applies, say, in a Title VII type case where we have a pretext claim. So the employer gives what's effectively a legitimate non-discriminatory reason. You don't deny that prima facie the reason given undue hardship is on its face legitimate and non-discriminatory? If it were applied equally. Correct. So then that's just like in Title VII type cases. Then you'd say, but I can show it's pretextual because, in fact, there's a comparator who's treated quite differently. And better. And better, yeah. But before we get to that issue, you also seem to be saying that somehow the fact that your client, during the pendency of them working out what they were going to do, was allowed to be on site, masked, et cetera, itself, even without the comparator, would give rise to a valid pre-exercise claim? I'd say, perhaps I'm not understanding the question entirely correctly, because I think the valid pre-exercise claim, it starts with the bona fides and sincerity, and then the burden shifts under Chapter 151B, which is the Massachusetts statute, that mirrors Title VII analysis substantially, I understand. Let me do it this way. This employer purports to allow religious exemptions. It did. There is evidence in the record that it allowed one for an employee who worked remotely. Right. Well, but I guess I'd put it slightly different. It purports to allow religious exemptions, just like medical exemptions. Yes. And as to both, it purports to say, but if it's an undue hardship, we won't make the accommodation. Yes. So on its face, both are treated the same. It's not, in other words, like earlier cases we had, in which only a medical exemption is allowed on the face of the policy. Religious exemptions are excluded entirely. Correct. It differs from Doe's versus Mills, which didn't allow. Okay. So we have a case here where we don't have to address whether you could have a medical exemption only. Correct. Because on its face, they're treating both exemptions the same, subject to the undue hardship test. On its face. Okay. And then the question is, what does the free exercise require us to do doctrinally or analytically in such a circumstance? How does one make out the claim? So one possibility is, well, on its face that's what's happening, but then, in fact, the religious persons are treated differently and worse than the medical exemption persons. And I assume in that setting it's not available to the employer to say, well, that's because there's a reason to treat the medical exemptions better categorically, because they've on their face said, no, we're going to treat them the same. I think I understand your point, Your Honor. And to that end, the appellees did submit a litany of cases that stand for the proposition that an employer is under no obligation to offer religious exemptions. But when they do, my argument is once they offer those religious exemptions, they have a duty to abide by the Constitution. Okay. So but with respect to this period where your clients, while the decision was being made about the undue hardship, were permitted to appear on site masked, et cetera, I heard you to be suggesting that somehow that itself could give rise to the free exercise claim you're bringing or be a basis for it. No, Judge. Okay. So then we can put that aside. And then is the claim then dependent on our conclusion that the comparator you've identified is a true comparator who is being treated better, seemingly for no other reason than that he was claiming a medical exemption rather than a religious one? The comparator, he tendered a religious exemption request. That was denied on the same grounds as were the appellants, that they represent direct threats to others. Nonetheless, despite him being a dangerous vector of disease, according to the finding made by appellees, he was allowed to continue to work for 90 days. So part of my argument. Now, what's the significance of this word contraindicated that's used in the record? Is there anything to indicate that the, in the record, to indicate that the defendant was of the belief that if you had had COVID, you were less likely to infect than a person who had not? No, their policy made no allowance for things like natural immunity by prior infection. It simply set down. I understand the policy didn't, but in making the undue hardship test, application of the undue hardship portion of the policy, is there anything in the record to indicate that they were relying on the natural immunity one might get, even if they were mistaken in so thinking? No. No, there's nothing in the record referring to that at all? Yeah. Counsel, I thought I heard you say a few minutes ago that because we're dealing with a request for a religious exemption, that the traditional undue hardship standard that applies in these reasonable accommodation situations, that that can no longer apply. I mean, the traditional standard is, I think, under both Title VII and under the Massachusetts law, if the requested accommodation imposes more than a minimal burden on the employer, then it's not a reasonable accommodation. Are you suggesting that that traditional formulation cannot apply when the accommodation we're dealing with is based upon a request for a religious exemption? No, Judge, I don't believe I was, at least I was not intending to make that point. How does the undue hardship standard differ in this religious exemption context? You're saying it doesn't differ at all? I'm saying, Judge, I mentioned that to highlight the fact that they were somewhat accommodated while the requests were pending. That three-week period of intermediate accommodation, as I'm styling it, would give rise to some evidence that's not in the record, but it would give rise to some evidence as to the hardships that were incurred while they accommodated the employees for these three weeks. Certainly, while they accommodated, pursuant to a medical exemption, the comparator employee for three months while he was unvaccinated, that would give rise to some evidence as to whether or not accommodating these unvaccinated employees presented any type of undue hardship. And importantly, Your Honors, if I may, the reason that this policy would fail, even under rational basis, is there's simply no evidence in the record that the vaccines that are available have any impact on the spread of contagion. Absent bald pronouncements by the... Maybe another way of asking it, though, is do you have to show a right to the accommodation before you can get to the question of whether there was differential treatment? I believe so, and I believe that's done by sincerely holding bona fide religious beliefs that are in conflict with the policy, such that the employee... But that's what I'm saying. We've never held, and I'm not aware of a case in our circuit or from the Supreme Court that holds, that there is a general right to be exempt from a vaccination requirement if one has a sincerely held religious belief against being vaccinated. In a neutral and generally applicable law that's applied evenly across everyone, if the law comes from a valid delegation of public health authority, like the legislature giving someone... But you're not contesting that here. Oh, I'm contesting that here, Your Honor. The Steamship Authority in its Enabling Act nor... But in this appeal, are you raising that issue as well? Yes. Okay. Yes, because the executive... For the free exercise claim, I guess I'm just trying to figure out how you get in the door to begin with so that we then start doing the analysis of whether there was differential treatment. They offer religious and medical exemptions. That's how we get in the door. The employees make a request to be exempted on a religious basis. The burden shifts to the employer to determine whether or not they can be accommodated. But where does that piece come from? Chapter 151B. No, no, no. Where does the authority's policy come from? No, where does the free exercise analysis you just did, that the fact that they have a general policy of allowing exemptions subject to an undue hardship claim, means that religious claimants who are treated worse have a free exercise claim at that point? I'd point to Judge Gorsuch and Dr. A. v. Hochul. Not a case that was taken up by the Supreme Court, but which Judge Gorsuch did write somewhat of an opinion where he stated that the First Amendment and free exercise clause protects not only the right to hold unpopular beliefs inwardly and secretly, but also the right to live out those beliefs publicly in the performance or abstention, in this case abstention from physical acts, which also he was following in the wake of the employment division. I'm trying to understand on this medical sort of factually why you attach such significance to it here. Just as a factual matter, my understanding is that the gentleman who got the benefit of the medical exemption for three months was because he presented evidence that he had suffered an infection, and as a medical proposition it would be unwise for him to be vaccinated. And so they accommodated him for that three-month period. And that three-month period was up, and he still took the position, I gather on religious grounds now, that he would not be vaccinated. They terminated him just as they did the other employees who refused to be vaccinated. So why in that factual scenario do you get this argument of differential treatment that allows you to invoke that body of law that you now rely upon? I just don't see how the facts allow you to make that argument. The argument is based on the idea that the comparator employee's physical harm was alleged to be jeopardized if he were to have taken the vaccine at the time shortly after his infection. Under the religious requests, the argument would be that their immortal soul is imperiled by the act of taking the vaccine, which is an accommodation they'd be seeking on permanent grounds, because of its impact on their free exercise rights. I hope I'm getting towards your point somewhat. Yes. What I'm not following is I thought you were saying it's relevant to the analysis here that religious exemptions were allowed. So now the way you just answered that question suggests this is a case that would be identical if all that was allowed was a medical exemption under the policy. I would point to the nature of the employee's roles in that employees who were pilots, able-bodied seamen, captains, were denied religious exemption requests. The same employee who was a pilot and an able-bodied seaman was granted, albeit a temporarily limited accommodation, but he was granted an accommodation under secular medical grounds and any disparate treatment between religious and nonreligious activities. What I'm asking is does it matter to the free exercise analysis doctrinally that the employer, rather than saying I'm only going to grant medical exemptions, also says I will grant religious exemptions just like I'll grant medical ones. If that matters, how does it matter? I'm not following from your argument how it matters because it sounds like you're saying it doesn't really matter. The case would be identical if they had only had medical exemptions and then they allowed one of these people get the medical exemption, still comes into work, he poses the same risk of infection, so the person with the religious is just as badly treated, therefore you win. But that's a much bigger holding for us to make than if your claim somehow is about the employer also granting religious exemptions, but I'm not seeing how it matters to your argument that this employer does also grant religious exemptions. It matters in the sense that cases like Doe's versus Mills, which came from a valid, the Maine's Center for Disease Control had an express delegation of authority from the Maine legislature to implement such a policy. They didn't offer religious exemptions, so the employer was under no obligation to conduct itself in a way that abided by the First Amendment when the policy itself made no allowance. Why does the allowance of the religious exemption require it to suddenly meet this free exercise standard in the way it treats them relative to one another? What's the case law that suggests that? What's the logic that suggests that? I'd say we have Elrod versus Burns, even minimal periods of time where one's First Amendment... But that's just back to the point that it would be just as true if no religious exemption was allowed at all. Maybe your position is it doesn't really matter that there's religious exemptions. This case is just a pure free exercise challenge to a vaccine mandate, and if you have a medical exemption, you must grant religious exemptions if you allow the person with the medical exemption to be on site. But I thought you were making a narrower argument than that, which had to do with the fact that even though they granted religious exemptions, they then have this differential treatment. But I'm just not seeing where that matters in your argument now. Please go ahead and answer that, then I have another question. I'll try. Obviously, I'm falling short on this point, Your Honor, and my apologies. But the fact that they granted one religious exemption to an employee who's completely differently situated than every other employee virtually that the Steamship Authority employs, someone who's working 100 percent remotely, that doesn't have much of a bearing on the disparate treatment between these same employees who were able to work under a medical exemption. That's the application of the policy, but formally the policy allows religious exemptions, which it did not in the main case. Does that matter? Yes. Why? Because once they do allow religious exemptions, the burden and the duty is on the employer. What case law supports that proposition and what logic supports it? I'm certain, Judge, that I have submitted cases in either my principle brief or my reply brief that are on point on that issue. One of them is the case of Michigan, I believe, the Seventh Circuit. By conditioning the privilege of playing sports and plaintiff's willingness to abandon their sincere religious beliefs, the university breached their free exercise rights. That's one case that did hold in our favor. This morning I tendered three additional cases that all emerged in the last week or two. One from the Sixth Circuit, Doster v. Kendall, in the context of an Air Force COVID-19 vaccine mandate. The Sixth Circuit found that the plaintiffs had met their burden, proving that the vaccine mandate imposed a substantial burden on their sincerely held religious beliefs. And I'd say factually, even though that was dealing with the RFRA, factually the analysis... Both medical and religious exemptions were allowed under the policy? Yes, yes. And Doster v. Kendall. And then also I submitted this morning the Garvey case out of the State Supreme Court in New York, obviously just persuasive authority, Your Honor, but the judge did find that the New York City vaccine mandate was arbitrary and capricious and could not be related to public health and safety because if it really were, the employees would have been put on unpaid leave on day one when the policy was adopted, if they really represented these dangerous vectors of disease. And, Your Honor, I know I'm well over my time, and I do have one minute in rebuttal, but I would like to just close by saying, this case is different because the Steamship Authority has no delegation of public health power, not from the executive order and certainly not from the OSHA ETS that was struck down before they began enforcing the policy. Judge Lopez, you had a question. It seems to me that if I understand your argument, you are taking, let's assume a case, we're just talking about a religious exemption, we're not into the comparator issue at all, we're dealing with a regulatory scheme dealing with only a medical exemption, excuse me, a religious exemption. It seems to me you are saying, contrary to what you said earlier, that the undue hardship standard does not change at all. It seems to me you are saying that when we're dealing with a religious exemption, because there are free exercise of religion implications, that a more exacting undue hardship standard is required, that it's not sufficient to say that if a person accommodating the religious belief will impose more than minimal cost, that's not good enough. Something more has got to be shown by the employer in order to deny that religious, to accommodate that religious belief. I'm trying to understand, what is the more that you are arguing for? Because you do seem to be arguing for more, and I'm not quite sure what that more is. I'm arguing for at least as much as was accommodated to the secular objectors to the vaccine mandate, and that the employer does have an affirmative duty to try in a good faith, interactive and transparent process to try and accommodate the religious objectors. In this case... So when they say here that to accommodate this request, we are increasing the likelihood that the individuals themselves become infected with COVID, that they'll transmit that infection to other people that they deal with face-to-face, that we'll have to spend more time and money in supervising how they interact. If we were to allow them to wear a mask, that's not good enough, because we have to supervise that to be sure that they're doing that. That's a real burden on us. So you're saying all of those rationales that they offer in refusing the accommodation, that's not good enough? For a couple of reasons, Judge Lipez. First of all, it's an evidence-free assertion that there's any difference between an unvaccinated person and a vaccinated person in terms of their ability to spread contagion. The CDC now agrees with appellant's position. They have changed guidance, which was operative back when the policy was implemented. Now the CDC recommends treating the unvaccinated and vaccinated equivalently when it comes to quarantine recommendations. So the public health guidance has come around to our side. I'm challenging, Your Honor, that the finding of undue hardship is based on this idea that the vaccines do mitigate the spread, which in this record, there's no support for that. You're saying that the court improperly took judicial notice of efficacy of the vaccine, the way in which it can advance public health interest. You're saying that there is an inadequate factual basis on this record for that determination? Yes, absolutely, Judge. The district court pointed to websites that themselves did not reference epidemiological studies, peer-reviewed studies, any hard scientific data that would satisfy even the most relaxed evidentiary standards. And while the district court, my judicial notice arguments were more how it set the stage for the order, saying that the vaccines control from COVID was such and such, ultimately, it overwhelmed appellant's arguments to have a district court that was so predisposed against their narrative. And so taking judicial notice of these facts without allowing hearing, and then also making determinations absent any hearing that a reviewing court is supposed to give a lot of deference to the trial court's findings. But you've acknowledged that the CDC had guidance that was consistent with the underpinnings of the policy at the time? At the time, yes. And that wasn't good enough for business to rely on because? Because the actions of the employer in this case were unmoored from any valid delegation of authority to an act. They're a public employer, and the Steamship Authority concedes that. And there was no, not within their enabling act, nor any contemporaneous legislation. There was nothing impelling them to adopt the vaccine mandate. In fact, they were late to the game of adopting vaccine mandates, which came fast and furious during October of 2021. This one wasn't adopted or implemented until January. So they claimed to be adopting it under the executive order by Governor Baker. That did not touch the Steamship Authority. It simply encouraged them. And they claimed to be adopting it under the OSHA ETS, which before they began enforcing the policy, had already been struck down by the Supreme Court as unconstitutional. And I note that the Supreme Court found in the more than half century that OSHA had been operating, never before had it sought to regulate, mandate that employees subject themselves to such an invasive medical procedure. It fell outside of OSHA's regulatory framework. Thank you. I don't think you answered Judge Howard's question if I'm following. Judge Howard, I apologize. Assume they had the authority to impose the mandate. I know you contest it, and we have to consider that. But I'm saying for purposes of the free exercise claim, assume they had the authority under state law to do it. Why, for free exercise purposes, should we not credit their reliance on the CDC record as it stood at the time of the adoption of the policy? And why is it relevant what the record now might show about what the CDC thinks, given that the business certainly is not acting arbitrarily in exercising the authority, assuming it had it, to rely on federal public health guidance? The federal public health guidance was flawed, as evinced by the fact that it has now done a 180 and come to meet appellant's claims from the very beginning, that there's no difference in contagion between a vaccinated person and an unvaccinated person. And any benefit of the vaccines is, it confers a private benefit to the recipient, in terms of ameliorating the severity of disease. But government does not exist to tell the citizens you can't drink, you can't smoke, you can't overeat, because that might be bad to your health. In the same... Okay, thanks. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin. Good morning. May it please the Court. I'm here on behalf of the appellees, Steamship Authority, and Janice Kenefick. The central issue in this appeal is whether Judge Stearns abused his discretion in denying the appellants the motion seeking the extraordinary remedy of a preliminary injunction. To overcome this deferential standard on appeal, the appellants must demonstrate that Judge Stearns committed error in four different ways. In finding that the appellants have no likelihood of success on the merits, can't establish irreparable harm, and can't establish that the balance of equities or public interest weigh in their favor. Steamship Authority respectfully submits that the appellants cannot demonstrate that Judge Stearns abused his discretion as to any of these four elements, let alone all four of them, which they must do in order to succeed on this appeal. I've heard a lot of confusing argument from Brother Counsel today on the likelihood of success element. I want to start by addressing the irreparable harm element, because I think that that factor can easily dispose of this appeal based on the black letter law in the First Circuit, as most recently articulated in the two together employees versus Mass General Burgum cases, which is that money damages provide an appropriate remedy for unlawful employment discrimination. I'm sorry, employment termination, which is exactly what we have here. There's no basis for any injunctive relief where money damages through the course of litigation can remedy any unlawful employment discrimination discrimination. Isn't the, I mean, the argument is when we're dealing with, I mean, they're invoking free exercise rights, constitutional rights, and isn't the law fairly clear that when a constitutional right is at stake, you can't really monetize that, that the irreparable harm analysis has to differ? Isn't that true? Well, first point, Your Honor, to the Doe's versus Mills case, where this court assumed for purposes of argument that the appellant in that case had established a First Amendment claim. The court went on to say that the appellant's First Amendment claims, even if they presumptively cause irreparable harm, the state in that case had overcome that presumption. So I would first point to that holding to say that just because there's a First Amendment harm alleged doesn't necessarily equate to irreparable harm. The harm in this case is the termination. And the fact that the plaintiffs are claiming that their First Amendment rights were violated does not change the fact that the harm is the termination of employment. And I would also point to the most recent Together Employees case of this court, where the appellants in that case argued that their injuries were of a constitutional magnitude. Now, we didn't have state action in that case. Mass General and Brigham was the employer. But this court went on to state that even if there was no constitutional issue in that case, that employer was still bound by on the basis of religion, and went on to find that the plaintiffs in that case were not required to perform or abstain from any action that violates their religious beliefs, which is the same situation in the present matter. The Steamship Authority did not force the appellants to get vaccinated. The Steamship Authority made vaccination a condition of employment. The appellants, seven of the appellants, not all 11, but seven of the appellants made the decision to not become vaccinated and thus to not work for the authority. So I would point to both the Mills case and Together Employees. Have we ever held that there's no irreparable harm from a free exercise challenge in an employment context? No, Your Honor. Okay. But you said that we never held necessarily the opposite, but we don't have a... It's implicit in the statement I read from the Doe versus Mills case. There was a presumption that the employer had overcome. But no, to be clear, there's no specific holding on that point. But that, I suppose, gets into the first factor, the likelihood of success on the Title VII claim, which really is the only claim... On the Title VII claim? I'm sorry, on the exercise claim. I'm sorry, Your Honor. That's the only claim that I've read in the appellate papers. So with respect to that claim, what is the state's interest in concluding that a public-facing employee, under the policy, what's the state's interest or the employer's interest in preventing a public-facing employee from appearing at work unvaccinated? Well, the employer's interest is reducing the spread of COVID-19 amongst its passengers, employees... Okay, so how does a medical exemption relate to that interest? Well, a medical... So to back up, the policy does provide for exemptions for medical reasons and religious reasons. That is required under the ADA and under Title VII and their state equivalents. So the fact that the policy contains those exemptions is a necessity... We never held that there's a requirement for religious exemptions. Under Title VII, the employer is under an obligation to engage in an interactive dialogue with... Okay, Your Honor. So then that makes it even more clear that there's... No, no, it doesn't, because what I'm trying to figure out is what is the employer's interest and then how does it relate to the way it's conducted itself? So its interest, you said, is in stopping spread. Yet it allows medical exemptions. Correct. And the record suggests it has allowed a medical exemption of a person who's public-facing. And as far as I can tell, there's no record evidence about what the risk of spread will be with respect to that person appearing in a public-facing role. Well, that individual is completely distinguishable factually from the 11... With respect to risk of spread? Yes. Is there record evidence showing that? The record evidence is that this was a request for an accommodation that was temporary for three months and it was coming off the heels of a COVID-19 infection and was in the context of that employee submitting a note from their provider stating that that individual cannot become vaccinated per CDC recommendations. Correct. Was his position a public-facing position, just as is the case with the individual seeking... It was, Your Honor. But the difference between that request and the appellant's request in this case is the appellant's requested an ongoing indefinite accommodation that would preclude them from getting vaccinated at all. So it's a temporal distinction. And the temporal distinction is three months? That's a fairly long time to be risking spread, isn't it? Well, Your Honor, the Steamship Authority doesn't have the obligation to reduce the spread entirely. It's doing what it can to mitigate to the extent possible. And that's what, in the Together Employees case, that was a part of the district court's holding that... Right, but one of the things, unless you tell me that the doctrine doesn't work this way, we're trying to figure out whether the asserted interest in distinguishing between the religious request and the non-religious request has any integrity to it. Isn't that the right question or is that the wrong question? Well, we were conducting an individualized analysis of each on their specific facts. And in the case of the medical exemption, it was brought with a note from a provider stating a sound basis. Right, but when you have a medical exemption only, the interest could be protection of the employee's health, okay? But if you also have a religious exemption, that's obviously not the state interest. Because otherwise, why were you allowing a religious exemption, which the policy allows? So it must be that the interest is in reducing risk of spread. I don't see what other interest the state could be asserting under its policy. Yes, it's reducing the risk of spread and creating a safe and... ...safe environment for the employer on its vessels and in its facilities as it can. As any employer who implements a vaccine mandate would be... Is the second half of that statement different than the risk of spread or the same? Well, I think they're part and parcel of each other. Yeah, so to reduce the risk of COVID-19 makes it safe. Exactly, so that's the asserted interest. But then the question is, does the conduct of the employer with respect to that interest... ...show that it's treating religious requesters differently and adversely? Because if there's no evidence suggesting that the persons who are being allowed to appear... ...pose any more risk of spread... ...any less risk of spread than the religious exemption requesters who are being denied... ...what justifies the differential treatment? Well, what justifies the differential treatment is, again, the different facts. We're talking about a limited period of time for one employee versus an indefinite period of time... ...possibly for years for 11 employees. So the interest in reducing the spread and creating a safer atmosphere for everyone on these vessels... ...is that the Steamship Authority was trying to mitigate the risk to the greatest degree possible. So in analyzing this one time-limited request by one employee who needed it through medical necessity... ...the Authority made the determination that it could approve that request under the ADA... ...which, by the way, has a higher undue hardship standard... ...while for these 11 appellants who requested an indefinite accommodation that, again, could last forever... ...they made the determination that that would unreasonably impact in a negative way the health and safety of its vessels. Counsel, during that three-month period when this individual did not have to be vaccinated... ...what kind of safeguards was he nevertheless required to take? Was he required to mask and maintain some distance to the extent possible from passengers and other employees? He was certainly required to mask because they had a mask mandate in place at the time. And the social distancing aspect I can't speak to, but I do know... ...I can see he was on the vessel, he was in a similar public-facing role. But again, we're talking about coming off the heels of an infection, having a limited time period in conducting those duties... ...versus, again, 11 appellants doing that for an indefinite duration. Was there any record evidence to suggest the employer had a basis for thinking that by virtue of the prior infection... ...there was less risk of spreading than a religious-exemption person would have been who had not been affected and took the same precautions? No, Your Honor. And was there any record evidence to suggest that the risk over those three months would have been relatively negligible compared to the risk over a year? A three-month limited accommodation for one person is certainly less of a risk than an indefinite time period. And I'm not sure there was any record evidence to suggest that the employer had a basis for thinking that by virtue of the prior infection... ...there was less risk of spreading than a religious-exemption person would have been who had not been affected and took the same precautions. Well, isn't the right comparison just one-to-one? Because presumably every medical exemption would have been granted the same request, just like every religious exemption. So if there's only one religious exemption... Well, I wouldn't say, Your Honor, that every medical exemption request would have been granted. Everyone like this person? Like this, if he's asserting the same... Right. Each request, again, under the ADA, each request would need to be analyzed individually to determine whether there is an undue hardship. And I can't speak to whether that would change based on the facts of any individual request. Again, each would have to be analyzed under the specific facts. And, for example, I point to the religious-exemption request that was granted. By the steamship authority, because after engaging in an accommodation, an interactive dialogue, the authority determined that that individual, who was asserting a religious-exemption request, could perform his duties remotely and not in a public-facing role. So it can't be that the authority singled out religious objections to the vaccine because of their religious nature, as we can point to that individual who was granted an exemption request based on their sincerely held religious belief. Just take one minute, and you could just, in your view, the features that make the medical exemption individual not a comparator are what? First of all, the fact that that request was analyzed under the ADA's undue hardship standard. Second, that it was supported by medical necessity, and there was a note provided along with that request from that individual's provider stating that under the CDC's recommendations, he couldn't get vaccinated for three months. The fact that it was a temporary accommodation request that had a date certain for when it would end, after which, as Brother Counsel already indicated, that person submitted a religious-exemption request, which was denied. And that person was ultimately terminated on April 12th. Okay. Counsel, so I gather the appellant is saying that there is a, I guess, a spiritual analog of physical harm that would be caused to that individual claiming the medical exemption. So just as he was concerned about the effect of having to take the vaccine during that time period on his physical health, they're saying that, well, it's not physical, but it imposes on our religious beliefs. We are harmed differently, but we are still harmed by requiring this vaccination. What's wrong with that analogy, if you will? Well, I would say, Your Honor, that the wrongs are similar in the sense, if you're talking about the second accommodation request by that individual, the harms are identical. They were both terminated. So what I'm saying, in terms of the irreparable harm factor here, the harms are the same, that both that individual and the appellants were terminated. If I understand your question correctly, the spiritual harm, in terms of what analysis are we talking about? Are we talking about their free exercise claim? The counsel can speak to that issue himself, but I think that's what they're saying, that being required to take this vaccine is contrary to our religious beliefs. And we are, to the extent that we are required to be vaccinated to preserve our job, our free exercise of religion, with respect to our ability to hold these beliefs without experiencing the kind of harm that will be imposed upon us, that's what's at stake here. What's wrong with that? Well, I would first point to Judge Stern's opinion that there has not been conclusively established on this record that religious beliefs are being asserted. And I think in the appellant's briefing to this court, that's made even more clear by the fact that the issues noted with the vaccine are not based in or rooted in religion, but rather based on science and efficacy and the approval process. So I would first point to Judge Stern's decision in that respect that the appellants, for purposes of their 151B claim, and I suppose also for their free exercise claim, have not established that these are beliefs that are rooted in religion. Well, let's move beyond that and assume that that's not our view. Where does that leave you? In other words, we're beyond the prima facie case issue. Then it moves to the undue hardship analysis, and the clearly established law in this circuit is that under Cloutier v. Costco, that there has to be a de minimis showing of undue hardship, which in this case has been easily met on this record, where the steamship authority has had to backfill with folks who've had to go out because of infections, at overtime rates, public trust that's placed in the authority to create and maintain a safe environment for folks using the vessels. Again, as has already been noted, the costs of having to oversee masking compliance and things of that nature. So the standard has been set by this court in terms of the de minimis. And the religious context does not change that at all. That undue hardship analysis, that, I gather, is your position. Yes, Your Honor. Thank you, counsel. At this time, would Attorney Daubert please just introduce himself on the record again for the one-minute rebuttal? Thank you, Patrick Daubert, on behalf of appellants. Your Honors, relying on an evidence-free narrative is arbitrary and capricious, even if it comes as a CDC policy on a CDC web page, which is quite subject to change, as the record shows. There's, in this case, the employer states the undue hardship is having unvaccinated individuals because they represent a direct threat to others. That's the undue hardship they can't accommodate. But there's no evidence in the record that being unvaccinated poses any different or greater threat than a vaccinated person when it comes to that point, the propensity for transmitting COVID-19. Thank you.